IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

PERDUE FARMS, INC.,

    Appellant,

v.

    C.A. No. S19A-07-003 RFS

JOHN ATKINSON,

    Appellee.

## ORDER

Submitted: 11/18/2019
Decided: 12/30/2019

*On Appeal from a Decision of the Industrial Accident Board.*

*Affirmed.*

Kristen S. Swift, Esq. and Francis X. Nardo, Esq., 750 Shipyard Drive, Suite 400, Wilmington, DE 19801, Attorneys for Appellant.

Andrea G. Green, Esq., 28412 Dupont Boulevard, Suite 104, Millsboro, DE 19966, Attorney for Appellee.

## I.  INTRODUCTION

This an appeal from the Industrial Accident Board ("Board"). Appellant Perdue Farms, Inc. ("Employer") appeals from the June 26, 2019 Board decision, awarding John Atkinson ("Atkinson") total disability benefits. For the reasons stated herein, the Board's decision is **AFFIRMED**.

## II. FACTUAL AND PROCEDURAL HISTORY

Atkinson alleged that he suffered an injury while working for Employer on September 10, 2018. Atkinson had worked for Employer for approximately one year at the time of the alleged work accident. He had worked as a jack driver for two to three weeks when the accident occurred. Atkinson's job duties included moving tanks filled with poultry wings. On September 10, 2018, while moving tanks, Atkinson struck his head on a piece of pipe. He was wearing his hard hat when he struck the bar. The strike caused his head to "jolt back."[1] Following the incident, Atkinson reported pain and vibration from his right ear to his right shoulder.

Atkinson reported the incident to his supervisor and continued working. On September 11, 2018, upon completing his shift, Atkinson sought treatment at Beebe Medical Center. Atkinson also completed a report of the incident at Employer's Wellness Center which is required for all accidents that occur on Employer's premises. He saw a doctor at the Wellness Center on September 24, 2018 and reported pain in his ear and shoulder and tingling in his fingers. Atkinson was referred to a neurologist. Treatment records indicated that, in October, 2018, Claimant treated with a neurologist and was found to have abnormal skin sensation, night pain, pins and needles, and tingling sensation on the right neck, shoulder and right arm.[2] In December, 2018, Atkinson had a neck MRI and, based on those results, Atkinson's primary care provider took him out of work and referred him to Dr. Bohman.[3]

On cross-examination, Atkinson further provided that he went to the hospital in December after another neck injury sustained while working at home. Atkinson testified that he experienced muscle pain to his neck when he was looking up while painting his wall.[4] Both

---

[1] Appellant's Br. Ex. A at 20.
[2] *Id.*
[3] Atkinson had an upper extremity EMG on December 5, 2018. Dr. Bohman reported that the EMG findings neither supported nor refuted his diagnosis of Atkinson. *Id.* at 9.
[4] Appellant's Br. Ex. B at 63.

2

medical experts were unaware of this subsequent injury. Atkinson did not report the subsequent injury, claiming it was a muscle strain.[5]

Dr. Bohman, testifying on behalf of Atkinson, concluded that Atkinson's work restrictions were reasonable and necessary and related to the work injury that occurred in September, 2018.[6] Dr. Bohman testified that he was unaware of any prior or subsequent neck injury. Both Atkinson and Dr. Bohman testified that Atkinson's symptoms began following the work accident and progressively worsened until Atkinson had surgery in January, 2019. Dr. Bohman placed Atkinson on a no work restriction on January 10, 2019.

Employer also provided medical expert testimony at the Board hearing. Dr. Rushton, testifying on behalf of Employer, determined that Atkinson had sustained a cervical spine sprain or strain as a result of the work injury. Both Dr. Rushton and Dr. Bohman agreed that Atkinson's treatment records did not indicate cervical spine complaints prior to the work accident. However, Dr. Rushton claimed that the neck symptoms were outside of the expected time frame post-injury.[7] Dr. Rushton further claimed that Atkinson's progressively worsening symptoms are inconsistent with a conclusion of a cervical spine strain or sprain as a result of the work injury.

Considering the testimony of both medical experts and the testimony of Atkinson, the Board determined that Atkinson was entitled to compensation for the work injury. The Board concluded that Atkinson's treatment history, since the work accident, indicated continued and progressively worsening cervical spine symptoms.[8] The Board found Dr. Bohman's testimony persuasive and concluded that Atkinson had proven that his alleged work injuries were causally

---

[5] Appellant's Br. Ex B at 55.

[6] Dr. Bohman concluded that Atkinson had multilevel stenosis which had been asymptomatic before the work accident but was rendered symptomatic by the work accident.

[7] Dr. Rushton determined that Atkinson, who Dr. Rushton reports had pre-existing cervical stenosis, had a high risk of developing cervical myelopathy at some point in his lifetime and the work incident did not impact his need for treatment or surgery. Appellant's Br. Ex. A at 16-17.

[8] *Id.* at 21.

3

related to his work activities, therefore, he was entitled to total disability benefits.[9] The Board explained:

> Claimant's treating surgeon, Dr. Bohman, is in a better position to evaluate Claimant's symptoms and assess his need for treatment and the Board finds his testimony persuasive. Furthermore, as detailed above, Claimant's treatment history since the work accident indicates continued and progressively worsening cervical spine symptoms, which did not begin to improve until Claimant's January 30, 2019 surgery.[10]

Employer now appeals the Board's decision claiming that the Board's decision is not supported by substantial evidence and the Board committed legal error by relying on Dr. Bohman's testimony because he was unaware of Atkinson's subsequent injury that occurred at home in December, 2018.

## III. DISCUSSION

On appeal from a Board decision, the Court's role is limited to determining whether the Board's conclusions are supported by substantial evidence and free from legal error.[11] Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."[12] Legal issues decided by the Board are reviewed *de novo*.[13] "On appeal, this Court does not sit as trier of fact with authority to weigh the evidence, determine questions of credibility, or make its own factual findings. It merely determines if the evidence is legally adequate to support the Board's findings."[14] "Weighing the evidence, determining the credibility of witnesses, and resolving any conflicts in the testimony are functions reserved exclusively to the Board."[15]

---

[9] *Id.* at 25.
[10] *Id.* at 21.
[11] *Morgan Properties Payroll Servs., Inc. v. Bowers*, 2017 WL 2350108, at *2 (Del. Super. Ct. May 31, 2017).
[12] *Olney v. Cooch*, 425 A.2d 610, 614 (Del.1981).
[13] *Whitney v. Bearing Const., Inc.*, 93 A.3d 655 (Del. 2014).
[14] *Lecompte v. Christiana Care Health Sys.*, 2002 WL 31186551, at *2 (Del. Super. Ct. Oct. 2, 2002).
[15] *Noel-Liszkiewicz v. La-Z-Boy*, 68 A.3d 188, 191 (Del. 2013).

4

This case comes down to whether the Board abused its discretion by relying on an expert's testimony where that expert was unaware of a subsequent injury. Employer challenges the weight and credibility afforded by the Board to Dr. Bohman's testimony because Dr. Bohman was unaware of an injury Atkinson sustained in December, 2018 while working at home.

Employer contends that Dr. Bohman's opinion could not sustain Atkinson's burden of proof because he was missing a critical piece of information – the subsequent injury. Dr. Bohman was unaware of the subsequent injury, however, he reviewed Atkinson's treatment records immediately following the work accident and confirmed that the treatment records from the day after the work accident confirmed his findings.[16] Dr. Bohman did not exclusively rely on Atkinson's medical records following the December, 2018 injury in forming an opinion. He considered Atkinson's treatment following the work accident when making his conclusion.

Furthermore, "the absence of evidence, as long as it is considered by the Board, is not necessarily dispositive of a particular issue."[17] In *Whitney v. Bearing Const., Inc.*, the Supreme Court addressed a Board decision where the expert, on whose testimony the Board relied, was unaware of a subsequent injury.[18] The Court stated that "[t]he Board is free to make its own inferences, weigh evidence, determine questions of credibility, and make its own factual findings

---

[16] Appellant's Br. Ex. A at 11.

[17] *Whitney v. Bearing Const., Inc.*, 93 A.3d 655 (Del. 2014) (citing *Steppi v. Conti Elec.*, Inc., 991 A.2d 19 (Del. 2010)).

[18] *Id.* Reversing the Superior Court's decision, the Court stated:
> The Board chose to rely on the testimony of Dr. Uthaman, the results of the MRI, and Whitney's own testimony over the testimony of Dr. Piccioni. Although we do not condone the fact that Whitney kept information about the 2010 Incidents from Doctors Uthaman and Piccioni, the record indicates that the Board fully considered the 2010 Incidents and relied on substantial evidence to conclude that they were nothing more than temporary aggravations. [T]he Board is entrusted to find the facts in any given case, and its findings of fact must be affirmed if supported by any evidence, even if the reviewing court thinks the evidence points the other way.

5

and conclusions."[19] The Board, in this case, determined that the disability related back to the work accident. The Board, while relying on the evidence and testimony before them, is free to draw that conclusion.

Employer also contends that the Board failed to consider the impact of the subsequent injury. The Board made reference to the December injury; however, in making its determination, it found the testimony and evidence indicated that Atkinson's injury was related to the work accident.[20] The Board was presented with testimony from both Atkinson and his treating surgeon, Dr. Bohman. The evidence showed that Atkinson did not treat for neck symptoms prior to the work accident but immediately began treatment following the work accident. Both Dr. Bohman and Atkinson testified that Atkinson's neck symptoms progressively worsened following the work accident. In addition, the Board found that Atkinson's treatment history indicated that his symptoms had progressively worsened since the work accident in September. "When medical testimony is supplemented by other credible evidence, such evidence is sufficient to sustain an award under the substantial evidence standard."[21]

The Board chose to rely on the medical testimony of Dr. Bohman and Atkinson.[22] The Board may give whatever weight it chooses to a claimant's testimony. The Board gave little weight to the subsequent injury in determining if Atkinson's disability related to his work injury. Though Employer disagrees with this, it is within the Board's discretion. There is sufficient evidence to support the Board's finding and, therefore, the Board's decision is supported by substantial evidence.

---

[19] *Id.*
[20] The Board noted "[w]hile doing work around his home in December 2018, Claimant 'strained' his neck." Appellant's Br. Ex. A at 5.
[21] *Whitney v. Bearing Const., Inc.*, 93 A.3d 655 (Del. 2014).
[22] The Board noted that the "testimony and evidence was consistent and supports a finding that, on September 10, 2018, Claimant sustained an injury which causally related to his work for Employer." Appellant's Br. Ex. A at 20.

## V. CONCLUSION

Considering the foregoing, the Board's decision is **AFFIRMED**. The Board's decision was supported by substantial evidence and free from legal error.

**IT IS SO ORDERED.**

_____
Richard F. Stokes, Judge

FILED PROTHONOTARY
SUSSEX COUNTY
2019 DEC 30 P 12: 17

7